Filed 9/11/15  In re B.S. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re B.S., a Person Coming Under the Juvenile Court Law. | B262595<br><br>(Los Angeles County<br>Super. Ct. No. CK76166) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>F.S.,<br><br>Defendant and Appellant. | |

APPEAL from the Superior Court for the County of Los Angeles.  Philip Soto, Judge.  Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

F.S. (mother) appeals the juvenile court's jurisdictional findings and dispositional orders with respect to her nine-month-old daughter, B.S. She contends substantial evidence does not support the finding that she was a current abuser of methamphetamine. She further contends the order removing the child from her custody was an abuse of discretion. We determine that the juvenile court finding is supported by substantial evidence and the removal order is not an abuse of discretion. We therefore affirm the judgment and order.

# FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 2014, a juvenile dependency petition was filed by the Department of Children and Family Services (Department) which contained allegations under Welfare and Institutions Code section 300, subdivision (b),[1] that the child has suffered, or was at substantial risk of suffering, serious physical harm or illness as a result of the parent's failure or inability to supervise or protect the child adequately and by the parent's inability to provide regular care due to the parent's substance abuse. The allegations were supported by the following allegations of fact. The mother is a current abuser of methamphetamine. On two dates during the pregnancy, October 15 and October 29, 2014, the mother had a positive toxicology screen for amphetamines. The child is of such a young age that she requires constant care and supervision, and the mother's illicit drug use interferes with providing regular care and supervision and places the child at risk of physical harm.[2]

The juvenile court held a detention hearing on the same day the petition was filed. The court found substantial danger existed to the physical or emotional health of the child; there were no reasonable means to protect the child short of removal; and

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     G.M., the child's alleged father, was not named in the petition, and his whereabouts were unknown.

2

reasonable efforts were made to prevent the child's removal from the home. The court ordered the child detained and ordered the Department to provide family reunification services to the mother. The court ordered the mother to sign releases for medical records. The court ordered the mother to undergo weekly, on demand drug testing and granted the mother visitation. The court continued the matter to January 29, 2015, for a jurisdictional hearing.

During an investigation concerning the allegations and the mother's background, the Department obtained the two October 2014 test results, which showed the presence of amphetamines.[3] The mother was evasive and uncooperative with the investigation and angry and aggressive with the social workers employed by the Department. The mother denied she ever abused substances. She stated her doctor told her the test results were an error. The mother's doctor told the Department that, if the mother was taking a blood pressure medication called Aldomet, the test results could have been positive for amphetamine. However, the doctor did not know whether Aldomet had been prescribed for the mother and terminated the conversation to return to work, without checking the mother's prescription record. The mother stated she did not know what medications she was taking at the time of the tests. The Department made subsequent efforts to get this information from the doctor, but he did not respond. The Department impressed on the mother that she urgently needed to cooperate in obtaining the prescription information. The mother refused to obtain a printout of the medications. The social worker offered to go to the mother's clinic and obtain the information in person, but the mother refused to provide a release of information.

A lab technician at Pacific Toxicology told the Department that no medication for blood pressure would cause the result to be positive for amphetamines. He said Aldomet

---

**3** The reports stated: "All POSITIVE results are by enzyme immunoassay and NOT CONFIRMED by LC-MS/MS. Unconfirmed positive may be useful for medical purposes, but does not meet forensic standards. [¶] . . . The concentration value must be greater than or equal to the cutoff to be reported as positive." The cutoff for amphetamines was 300 ng/mL. Methamphetamine was not tested for separately. We assume it is included in the broader category, "amphetamines."

3

would not cause a positive result because it does not contain amphetamine or methamphetamine.

The Department's investigation revealed further that the mother had lost custody of the child's two half-siblings in a 2009 dependency case. In that case, the court sustained allegations mother physically abused one of the children, inflicted physical violence on the children's father (father), shattered the father's living room window and threw the family dog through the broken window in the presence of the children, repeatedly told the children she would stab the father, and forced one of the children to telephone the father and call him profane names while pulling that child's hair. The mother did not comply with the court's counseling orders or change her angry, violent, profane, and defiant ways. She was on probation for an earlier criminal conviction. She violated the terms of a restraining order, and that caused her to violate her criminal probation. The dependency case was concluded when the court gave custody of the half-siblings to the father and terminated jurisdiction.

The child suffered from birth defects. On January 21, 2015, she underwent surgery for Pyloric Stenosis (tightening around the intestinal area). She also had a problem with her eye, which one doctor diagnosed as Coloboma and another doctor as Ptosis. She was scheduled to see a specialist at UCLA on March 9, 2015.

Shortly before the January 29, 2015, date for the jurisdictional hearing, the mother produced a prescription bottle for hydrochlorothiazide and stated this was the only medication she took during the pregnancy. She stated that she now took this medication on a daily basis. The mother further stated that the judge would be verifying with the doctor what medication she was taking. She stated, "The Judge's' job [is] to get that information so she 'doesn't need to do the Judge's job.'" The mother stated she was not enrolled in any rehabilitation services the court ordered and she did not need to take a parenting class because she had already taken one.

On January 29, 2015, the court granted the mother's request to continue the jurisdictional hearing to March 3, 2015, for a supplemental report from the Department.

4

The court ordered the Department to further investigate the mother's use of legal and illegal drugs. The mother signed a release of information. The court granted the Department discretion to address a safety plan if appropriate and to release the child to the mother if appropriate. The court ordered the mother to cooperate with the Department by doing such things as enrolling in programs the Department referred her to. The court admonished the mother, "I am not going to show a lot of sympathy to you if you're not helping out on your part."

Following the court's order, the Department made numerous attempts to contact the mother's doctor by telephone and faxed to him the mother's signed release. He did not reply. The investigation revealed the mother did not have stable housing. She stayed at the maternal grandmother's home a few nights a week and slept at other people's homes the other nights. The mother was not enrolled in any of the services the Department had earlier recommended. A multidisciplinary assessment team was convened, which the mother attended. She was given new referrals for the services the assessor recommended. These included parenting, individual counseling, an anger management program, and a substance abuse program. The mother stated she was looking for a place to live so that she can have the child in her care.

The court held a jurisdictional hearing on March 3, 2015. The Department introduced into evidence its detention report, jurisdiction report, and two last minute information reports. All of the toxicology reports[4] were introduced into evidence as attachments to reports. The mother objected to the admission of the two reports that reflected positive results for amphetamines during the pregnancy, on the ground the positive results did not meet forensic standards and therefore were not relevant and were more prejudicial than probative (Evid. Code, §352). The court overruled the objection. The court took judicial notice of the prior sustained petition concerning the two half-

---

**4** In addition to the two October 2014 toxicology reports, there were eight other reports. The eight other reports indicated that mother tested negative at the child's birth and on six court ordered random drug tests administered thereafter by Pacific Toxicology, and was a no-show for one test.

siblings and all prior minute orders. The mother did not submit evidence. The mother argued that the two positive screens were irrelevant because the findings did not meet forensic standards. Moreover, the cutoff in the positive toxicology reports was 300 ng/ml, rather than the 1,000 ng/mL cutoff used by Pacific Toxicology.

The court sustained the petition as pled. Among other things, the court noted that the mother's defense was that the hydrochlorothiazide she took during the pregnancy was what produced the two positives for amphetamines, not amphetamines themselves. The court stated: "She has a number of negative tests. . . . So she can leave the . . . illicit drugs alone at least long enough to test clean for some number of weeks. But she continues to press the investigator by saying, 'I'm not taking illicit drugs. I didn't take illicit drugs. I took this prescribed medication which I'm taking still.' [¶] . . . If she's taking drugs that are prescribed and are giving a false positive on these two occasions, they would be giving again a false positive now. . . . [B]y testing negative, she undermines her contention that she was taking prescribed medication that gave a false positive. If they were false positives last fall when she was pregnant, then they would be false positives now."

The court declared the child a dependent of the court. The court found by clear and convincing evidence there were no reasonable means to keep the child safe in the mother's care and a substantial risk of harm exists to the child if returned to the mother. The court ordered custody to be taken from the parent and placed the child in the custody of the Department for suitable placement. The court ordered family reunification services. The mother's court ordered case plan required her to have ten random consecutive drug tests, with credit given for five pre-existing clean tests. The court ordered her to participate in a developmentally appropriate parenting program and individual counseling to address case issues, including anger management issues. The mother objected to being ordered to do programs. The court granted unmonitored visitation with the child in placement and monitored outside of placement and granted the mother permission to attend the child's doctor visits. The court granted the Department

6

discretion to liberalize the mother's visits and discretion to walk on a request for a home of parent-mother order. The Department was ordered to provide the mother with transportation assistance, housing referrals, and low cost/no cost [counseling] referrals. The court also ordered the Department to assess the home of the maternal grandmother and granted discretion to release the child to the maternal grandmother's home. The court stated: "I'll have the grandmother checked out and see whether or not we can release to the grandmother . . . and give the Department discretion to release to the grandmother. [¶] In the interim between now and the [section 366.21, subdivision (e)] hearing, if the Department can work things out with the mother for a [home of parent-mother] order so long as she lives in an approved home like the grandmother's home, if it's approved, I have no problem with that either. But I'm not going to jump off this cliff and hope that we all land safely. We have to take this in stages. We have to know that this child is being taken care of."

## DISCUSSION

I. *Substantial Evidence Supports the Jurisdictional Finding*

The mother contends there was no substantial evidence that she was a current abuser of methamphetamine or other illegal drugs or that her drug use created a risk of harm to the child. We disagree with the contention.

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] '"[T]he [appellate] court must review the whole

7

record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate.]"' [Citation.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)' (See *In re Angelia P.* (1981) 28 Cal.3d 908, 924.)" (*In re I.J.* (2013) 56 Cal.4th 766, 773 [quoting with approval the standard of review stated by the court of appeal below].)

Section 300, subdivision (b) describes a child who "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.)

"[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. [Section 300, subdivision (b)] require[s] only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of [section 300] 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm.*' (§ 300.2, italics added.) 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J., supra,* 56 Cal.4th at p. 773.)

"The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.)

The juvenile court's determination in this case is amply supported by substantial evidence. Two pregnancy drug screens revealed the mother ingested amphetamines a

8

mere four months before the hearing. The court did not believe the mother's denial or her story that taking a prescription medicine for high blood pressure caused the positive results. There was no evidence the mother was prescribed the medication her doctor stated might cause a false positive. As the court pointed out, the fact the drug that was claimed to have caused false positives during pregnancy did not cause false positives subsequently, undermined the mother's denial she abused amphetamines. The mother's denial that she used illicit drugs and refusal to obtain drug treatment establishes she was not rehabilitated. It was reasonable for the court to infer from this evidence that the mother used amphetamines during the pregnancy and this drug use was not an isolated event,[5] the mother was a current abuser of illegal drugs, and the children were at risk of harm at the time of the hearing.

We are not persuaded by the mother's argument that the positive test results do not support an inference of amphetamine use because the reports stated the results did not meet forensic standards and the cutoff concentration was lower than the cutoff concentration value another lab employed. The record does not indicate the significance of not meeting forensic standards. The lab reports also stated that the results "may be useful for medical purposes." Even though the results did not meet forensic standards and the tests used a lower cutoff concentration value, there is no basis in the record for concluding that the results, which may be useful for medical purposes, are inherently unreliable for purposes of determining whether a child comes within the jurisdiction of the juvenile court.

Nor are we persuaded by the mother's argument that the court's determination should be reversed because the record contains evidence, such as her denial, negative drug tests, and statements from the maternal grandmother and a former partner that they had not seen the mother use drugs, that does not support the court's determination. The argument is an attempt to persuade us to reweigh the evidence and reach a different

---

**5** The court indicated, that, rather than establishing the mother's drug use was an isolated event, subsequent negative tests merely indicated that the mother could refrain from drug use for a few weeks or months.

result.  That is not our role.  (See, e.g., *Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 465; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 228 ["[t]he judgment will be upheld if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence"].)  Based on the applicable standard of review, we conclude the record contains substantial evidence supporting the court's determination the child comes within the jurisdiction of the court under section 300, subdivision (b).

II.  *Substantial Evidence Supports the Removal Order*

The mother contends substantial evidence does not support the juvenile court's findings that it would be detrimental to the children to be returned home to her and there were no reasonable means to protect the children without removing them from her physical custody.  We disagree with this contention as well.

An order removing a child from parental custody is reviewed for substantial evidence in a light most favorable to the juvenile court's findings.  (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

Section 361, subdivision (c)(1) provides:  "A dependent child shall not be taken from the physical custody of his or her parents . . . with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5), inclusive. . . .  [¶]  (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  "The focus of the statute is on averting harm to the child."  (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.)

The removal order is supported by substantial evidence.  The child is a vulnerable infant, with ongoing medical needs.  The mother's amphetamine abuse creates a

10

significant risk of harm to the child. (*In re Drake M.* (2002) 211 Cal.App.4th 754, 767 ["in cases involving [young children], the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm"]; see §300.2.) The fact the mother abused drugs while pregnant with the child evidences a reckless indifference to the child's safety and health. The sustained allegations in the half-siblings' case of out-of-control anger, physical abuse, and grossly inappropriate parenting, and the truculence, lack of cooperation, and defiance she demonstrated in this case, establish that the mother has deep-seated issues with anger management, accepting responsibility, and appropriate parenting. These issues are unresolved. Moreover, as she is homeless, the mother is not able to provide the child with a stable home. Even if she had a stable home, the fact that she did not cooperate with the Department, failed to comply with court orders, and did not believe she needed to change, indicated she would not comply with court orders and efforts by the Department designed to keep the child safe in her home. This evidence supports the court's conclusion that the child would be at substantial risk of harm if she were in the mother's physical custody and there were no reasonable means by which the child's physical health can be protected without removing the child from parental custody.

## DISPOSITION

The judgment and orders are affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIRSCHNER, J.*


We concur:


TURNER, P.J.


BAKER, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.